# COURT OF APPEALS OF VIRGINIA

## Record No. 0734-25-1

CURTIS DANIELS

v.

CITY OF HAMPTON DEPARTMENT OF SOCIAL SERVICES

Present: Judges O'Brien, Chaney and Raphael

Argued by videoconference

Opinion Issued July 14, 2026[*]

**FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON**
Michael A. Gaten, Judge

Charles E. Haden for appellant.

(L. Olivia Alexander, Assistant City Attorney III; Anne V. Ligon, Assistant City Attorney II;
A. Michele Cavanaugh, Guardian ad litem for the minor children; Cavanaugh Law, PC, on brief),
for appellee. Appellee submitting on brief.

**MEMORANDUM OPINION BY**
**JUDGE VERNIDA R. CHANEY**

Curtis Daniels appeals the circuit court's orders terminating his parental rights. He

contends that the evidence did not support termination and that the circuit court erred in

declining his request for more time to remedy the conditions resulting in foster care. Finding no

error, this Court affirms the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Daniels and Kanisha Kellam[2] are the biological parents of two children, the subjects of this appeal. Before entering foster care, the children lived with mother and her boyfriend, Ronnie Armstead, Jr. The family had a lengthy history with the Hampton Department of Social Services. In 2015, the children were placed with their maternal aunt due to concerns about mother's ability to provide care. After the Department received a report that mother had physically abused her son in 2019, the children were placed with a family friend.

Between 2020 and 2022, the Department received "at least" 12 child protective services reports of mother's neglect, excessive physical discipline, exposure of the children to domestic violence, and inadequate housing. Hampton City Police frequently responded to domestic violence calls between mother and Armstead. Although father knew of the Department's involvement, he never served as a placement option for his children or became involved in their lives as a full-time caregiver.

In July 2023, law enforcement officers received a report that mother was intoxicated and acting erratically around the children. The report also alleged that mother had the children outside during a heat advisory. After mother's arrest for public intoxication, the police notified the Department that the children needed placement. Mother agreed to the children's placement

---

[1] This memorandum discusses some facts in the sealed record. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar*, 302 Va. 234, 240 n.2 (2023).
 "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).

[2] The trial court also terminated Kellam's parental rights, but she did not appeal.

with a family friend via a safety plan.[3]  She admitted to the Department that she was addicted to alcohol and needed treatment.

The Department interviewed the 13-year-old daughter and 10-year-old son.  The children confirmed that mother drank heavily and frequently fell asleep, behaved irrationally, or started fights with Armstead when drunk.  The children had witnessed physical violence between mother and Armstead on multiple occasions.  The children told the Department that they feared for their safety when mother and Armstead drank.

After mother's release, the Department received several reports that she continued to abuse alcohol and "plac[e] herself at risk with dangerous individuals."  The Department contacted father, who stated that he was moving to a new residence and "did not know when that would be finalized."  On September 21, 2023, the Department executed an emergency removal of the children.  The Hampton City Juvenile and Domestic Relations District Court entered preliminary removal orders and found the children to be abused or neglected.  The JDR court later entered dispositional orders and approved an initial foster care goal of return home or relative placement.

After the children entered foster care, father told the Department that he was unsure if he wanted to seek custody.  But in January 2024, father informed the Department that he was willing to work toward that goal.  To gain custody of the children, father was expected to maintain adequate housing and a stable income sufficient to provide for the children's needs.  The Department also required father to complete a parental capacity evaluation and follow all recommendations.  Father completed the evaluation in February 2024.  Based on the results, the Department referred father to a parenting education course.  The Department also offered father

---

[3] The family friend initially was interested in seeking custody but later informed the Department she was unable to care for the children long term.

reunification services and therapeutic parent-child interactions with the children through Together Lives Change.

Father reported that he was employed full-time but never provided documentation confirming his income. Although father informed the Department that he was living with his girlfriend, the Department could not confirm his housing. Father did not enroll in the parenting education course despite receiving registration information from the Department. Although he completed an initial assessment with Together Lives Change in March 2024, father did not return the provider's follow-up calls to schedule therapeutic parent-child interactions or reunification services. The Department reminded father to contact the provider and schedule a session, but he never did.

During the foster care case, father's contact with the Department was minimal and he did not attend any monthly permanency meetings. The Department asked father to identify paternal relatives who could serve as potential placement options for the children; father never provided any names. After September 2024, the Department was unable to contact father.

The Department then petitioned to terminate father's parental rights to the children and change the foster care goal to adoption given his lack of communication and failure to participate in services. The JDR court granted the Department's petitions. Father appealed to the circuit court.

At the circuit court hearing, the Department presented the evidence outlined above. Father testified that his name was not on the lease for the apartment where he lived with his girlfriend, so the Department could not verify it as his residence. According to father, he obtained his own housing six months before the hearing. Father explained his lack of contact with the Department by claiming that his phone number had changed; he admitted that he never

gave the Department his new number. He claimed he attempted to contact the Department, but did not explain how.

According to father, he was "not able to complete anything recommended" by the Department because it had "too many requests." He claimed that he had not participated in services because he "could not find time to do any of the requests" due to his work schedule. But father also testified that sometime before the hearing, he became unemployed. Father had recently been hired for a new job but had not started it yet. Father asked the circuit court for more time to complete the Department's requests.

At the time of the hearing, the children had been in foster care for about 19 months. The daughter was 15 and the son was 12 years old. The children resided together in the same foster home. At first, the son exhibited developmental delays and struggled with behavioral issues at school, such as walking out of class, yelling at staff, or not following directions. The son's education plan was updated to better accommodate his academic needs and address his behavioral issues. He also participated in outpatient therapy, intensive in-home services, therapeutic martial arts, and received medication for ADHD and disruptive mood disorder. The daughter participated in outpatient therapy, positive behavior support services, and received medication management. Her outpatient therapy provider worked with her on building coping skills and positive self-confidence. The daughter was doing well in school and enjoyed going on school trips.

After considering the evidence and arguments, the circuit court approved the foster care goal of adoption and terminated father's parental rights to the children under Code § 16.1-283(B) and (C)(2).

ANALYSIS

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Father argues that the evidence did not support the termination of his parental rights under Code § 16.1-283(C)(2). He alleges that he was unable to complete the Department's requirements to gain custody of the children due to his work schedule.

Code § 16.1-283(C)(2) provides that a parent's parental rights to a child may be terminated if the court finds by "clear and convincing evidence" that termination is in the child's best interest and that:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). Code § 16.1-283(C) "requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271.

The record supports the circuit court's termination of father's parental rights under Code § 16.1-283(C)(2). Father admitted that he failed to complete the services provided by the Department. He claimed he could not complete *any* of the services because the Department had "too many requests" and he "could not find time" due to his work schedule. But father failed to participate in any of the requested services even after he left that job and was unemployed. The Department "is not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013) (quoting *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 243 (1982)).

Moreover, father never provided proof of a stable income sufficient to support the children's needs. Father claimed he obtained his own housing six months before the circuit court hearing, but he failed to update the Department so it could confirm the residence met the children's needs. From the beginning of the foster care case, father missed meetings and maintained minimal contact with the Department. He did not even return a phone call from a service provider to attempt to schedule services. And father ceased all contact with the Department entirely after September 2024—nearly seven months before the circuit court hearing. Father admitted that he never gave the Department his new phone number. Father's lack of

communication with the Department demonstrated his unwillingness to cooperate with its efforts to help him gain custody of his children.

Father also contends that the circuit court should have given him more time to participate in services and demonstrate his ability to remedy the conditions that required the children's placement in foster care. But Code § 16.1-283(C)(2) contains a "twelve-month time limit . . . designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." *Joyce*, 75 Va. App. at 704 (quoting *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003)). "The statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." *Akers v. Fauquier Cnty. Dep't of Soc. Servs.*, 44 Va. App. 247, 257 (2004) (quoting *Lecky v. Reed*, 20 Va. App. 306, 312 (1995)).

Father made no effort with the Department towards gaining custody until January 2024— nearly four months after the children entered foster care. The Department tried to provide services to father, but he refused to participate. Father then ceased contact with the Department after September 2024, causing a nearly seven-month interruption in communication. By the time of the circuit court hearing, the children had been in foster care for approximately 19 months. Given the evidence in the record, the circuit court's decision to decline father's request for more time to participate in services was not plainly wrong.

Father also asserts that the circuit court erred in terminating his parental rights because the Department failed to prove by clear and convincing evidence that termination was in the children's best interests. "'[T]here is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard." *Eaton v. Wash. Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 331 (2016) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 48 (2014)). "Instead,

'[t]he question must be resolved . . . in light of the facts of each case.'" *Id.* (alterations in original) (quoting *Toombs v. Lynchburg Div. of Soc. Servs.*, 223 Va. 225, 230 (1982)).

During the 19 months the children were in foster care, their foster family provided the support necessary to support their needs. Father concedes that he requires "extra time and assistance" before he will be able to care for the children. But "it is in the best interests of children to receive a permanent placement without languishing in the foster system." *Simms*, 74 Va. App. at 464. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." *Id.* at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004)). Thus, the record supports the circuit court's finding that the termination of father's parental rights was in the children's best interests.[4]

Father also challenges the circuit court's findings under Code § 16.1-283(B). "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and declining to address termination of parental rights under another subsection). Since the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2), we need not address whether father's parental rights were also subject to termination under Code § 16.1-283(B).

---

[4] Father appeals "both the permanency planning and termination orders" for the children. To the extent that he assigns error to the circuit court's approval of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms*, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*